BENTON, Circuit Judge,
dissenting.
In Klehr v. A.O. Smith Corp., 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997), the Supreme Court describes a “continuing violation” that restarts the statute of limitations under antitrust law:
Antitrust law provides that, in the case of a ‘continuing violation,’ say, a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, each overt act that is part of the violation and that injures the plaintiff, e.g., each sale to the plaintiff, starts the statutory period running again, regardless of the plaintiffs knowledge of the alleged illegality at much earlier times.
Klehr v. A.O. Smith Corp., 521 U.S. 179, 189, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) (internal quotations omitted). The majority tries to limit Klehr to its facts — that it was a RICO case. However, federal courts “are not free to limit Supreme Court opinions to the facts of each case.” McDonough v. Anoka Cnty., 799 F.3d 931, 942 (8th Cir. 2015) (internal quotations omitted). The majority says Klehr “merely illustrated” the rule, but “federal courts are bound by the Supreme Court’s considered dicta almost as firmly as by the Court’s outright holdings, particularly when the dicta is of *951 recent vintage and not enfeebled by any later statement.” Id. (internal quotations omitted).
The rule is clear: “each sale to the plaintiff, starts the statutory period running again, regardless of the plaintiffs knowledge of the alleged illegality at much earlier times.” Klehr, 521 U.S. at 189, 117 S.Ct. 1984. See also Oliver v. SD-3C LLC, 751 F.3d 1081, 1086 (9th Cir. 2014) (“[T]he Supreme Court and federal appellate courts have recognized that each time a defendant sells its price-fixed product, the sale constitutes a new overt act causing injury to the purchaser and the statute of limitations runs from the date of the act.”); In re Cotton Yarn Antitrust Litig., 505 F.3d 274, 290-91 (4th Cir. 2007) (noting that the complaint would be timely “so long as plaintiffs made a purchase from the Defendants within [the limitations period]”); Morton’s Market, Inc. v. Gustafson’s Dairy, Inc., 198 F.3d 823, 828 (11th Cir. 1999) (“[E]ven if there were no price-fixing conversations after 1987 ... if plaintiffs purchased milk at a fixed price after that date, the purchase would constitute an overt act that injured it. A cause of action would accrue with each purchase and a new statutory period would begin to run.”).
Skirting Klehr, the majority relies on Varner v. Peterson Farms, 371 F.3d 1011 (8th Cir. 2004). The defendants there induced plaintiffs to take out a loan based on false information. Varner, 371 F.3d at 1011. More than four years later, they sued for antitrust “tying” violations. This court rejected plaintiffs’ “continuing violations” argument because “[performance of the alleged anticompetitive contracts during the limitations period is not sufficient to restart the period.” Id. at 1020.
The present case is distinguishable. Var-ner is about a tying arrangement, not “a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years.” See Klehr, 521 U.S. at 189, 117 S.Ct. 1984. A horizontal price-fixing conspiracy is a -per se antitrust violation. See Leegin Creative Leather Products, Inc. v. PSKS, Inc., 551 U.S. 877, 886, 127 S.Ct. 2705, 168 L.Ed.2d 623 (2007). A per se violation is a restraint that has “manifestly anticompetitive effects and lack[s] any redeeming virtue.” Id. (internal citations omitted). The horizontal price-fixing agreement gave the defendants “unlawful market power” to inflict new and accumulating injury each time defendants sell a propane tank. See Wholesale Grocery, 752 F.3d at 736. Under Klehr, “each sale to the plaintiff, start[ed] the statutory period running again.” See Klehr, 521 U.S. at 189, 117 S.Ct. 1984.
The majority’s reliance on Midwestern Machinery is similarly unpersuasive. There, this court distinguished between merger and conspiracy cases. “Unlike a conspiracy or the maintaining of a monopoly, a merger is a discrete act, not an ongoing scheme. A continuing violation theory based on overt acts that further the objectives of an antitrust conspiracy ... or that are designed to promote a monopoly ... cannot apply to mergers. ...” Midwestern Machinery Co. v. Northwest Airlines, Inc., 392 F.3d 265, 271 (8th Cir. 2004). Thus, “to apply the continuing violation theory to non-conspiratorial conduct, new overt acts must be more than the unabated inertial consequences of the initial violation.” Id. at 270 (emphasis added). See also Z Techs. Corp. v. Lubrizol Corp., 753 F.3d 594, 599 (6th Cir. 2014) (distinguishing between conspiratorial and non-conspiratorial cases in applying the continuing violations theory). Here, the plaintiffs allege conspiratorial conduct — illegally fixing prices — and the maintenance required to “further the objectives of an antitrust conspiracy....” See Midwestern Machinery, 392 F.3d at 271. “Under Klehr, [defendants here] committ[ed] an overt act each time [they] use[d] unlawfully acquired *952 market power to charge an elevated price.” See In re Wholesale Grocery Prods. Antitrust Litig., 752 F.3d 728, 736 (8th Cir. 2014).
The majority’s concern about plaintiffs sleeping on their rights is irrelevant because the statutory period runs again “regardless of the plaintiffs knowledge of the alleged illegality at much earlier times.” See Klehr, 521 U.S. at 189, 117 S.Ct. 1984. See also Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 502 n.15, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968) (noting, in the case of a continuing violation under the Sherman Act, “Although [plaintiff] could have sued in 1912 for the injury then being inflicted, it was equally entitled to sue in 1955”). At any rate, the Klehr rule does not discourage timely-filed suits because a “plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period.” Id. at 190, 117 S.Ct. 1984. Moreover, this rule prevents companies from “agree[ing] to divide markets for the purpose of raising prices, wait[ing] four years to raise prices, then reaping] the profits of their illegal agreement with impunity because any antitrust claims would be time barred.” Wholesale Grocery, 752 F.3d at 736.
Because I believe Klehr controls this case, I dissent.